SCHLAM STONE & DOLAN LLP
Bradley D. Simon (*pro hac vice forthcoming*)
David J. Goldsmith
Thomas A. Kissane (*pro hac vice forthcoming*)
26 Broadway, 19th Fl.
New York, NY 10004
(212) 344-5400
bsimon@schlamstone.com

*Attorneys for Plaintiff CoreCivic, Inc.*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CORECIVIC, INC.,<br><br>                    Plaintiff,<br><br>         v.<br><br>PHILIP D. MURPHY, in his official capacity as Governor of the State of New Jersey, and MATTHEW J. PLATKIN, in his official capacity as Attorney General of the State of New Jersey,<br><br>                    Defendants. | Civ. No. _____<br><br>**COMPLAINT** |

### INTRODUCTION

1.  Plaintiff CoreCivic, Inc. ("CoreCivic") brings this action for declaratory and injunctive relief against Governor Philip D. Murphy and Attorney General Matthew D. Platkin concerning New Jersey Assembly Bill 5207 (AB-5207), L.2021, c. 199, §§ 1-2, codified at N.J. Stat. Ann. §§ 30:4-8.15 to -8.16.

2. AB-5207 undermines and eliminates the congressionally funded and approved enforcement of federal immigration law by U.S. Immigration and Customs Enforcement ("ICE") within the State of New Jersey. In particular, AB-5207 prohibits ICE's further renewal of a contract it first entered into on or about July 1, 2005, and has since renewed several times (the "ICE Contract"), under which CoreCivic manages and operates the Elizabeth Detention Center ("EDC") in Elizabeth, New Jersey. CoreCivic previously contracted with ICE's predecessor agency, the Immigration and Naturalization Service ("INS"), to manage and operate the EDC since 1996. The EDC represents essentially the entire immigration detention capacity for the Federal Government in New Jersey.

3. The Federal Government has express statutory power to detain individuals in connection with federal immigration proceedings (8 U.S.C. § 1231(g)(1)), and to make arrangements with third parties to house federal detainees in private facilities (8 U.S.C. § 1231(g)(1)). Yet, under AB-5207, it is illegal for the Federal Government to enter into, extend, or renew such contracts for immigration detention facilities in the State of New Jersey.

4. Any State law that interferes with or is contrary to the laws of Congress is invalid pursuant to Article VI, ¶2 of the United States Constitution (the "Supremacy Clause"). The immunity of the Federal Government from state regulation is a fundamental principle of the Constitution.

5. The ICE Contract calls for CoreCivic to house federal immigration detainees at the EDC facility through August 1, 2023. CoreCivic has a clear and reasonable expectation that the ICE Contract would be renewed but for the effect of AB-5207.

6. Because it forbids ICE from renewing the ICE Contract with CoreCivic, AB-5207 directly regulates the authority of the Federal Government in its exercise of sovereign powers within the supreme sphere of federal action. This Court should therefore declare that AB-5207 is unconstitutional and/or preempted by federal law, and enter a preliminary and permanent injunction restraining Defendants from enforcing the statute against CoreCivic.

## JURISDICTION AND VENUE

7. This Court has jurisdiction under 28 U.S.C. § 1331 because the question of whether AB-5207 violates the United States Constitution or is preempted by federal law is a federal question.

8. This Court also has jurisdiction under 28 U.S.C. § 1332 because CoreCivic and Defendants are citizens of different states and the value of the declaratory and/or injunctive relief sought by CoreCivic exceeds $75,000, exclusive of interest and costs.

9. Further, this Court has additional, supplemental jurisdiction under 28 U.S.C. § 1367 over CoreCivic's request for relief pursuant to AB-5207 because

that claim is "so related to claims in the action within [this Court's] original jurisdiction that [it] form[s] part the same case or controversy." 28 U.S.C. § 1367(a).

10. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this claim occurred, or a substantial part of the property that is the subject of this action is situated, in this District. The EDC is located in this District, and the effects of AB-5207 are being and will continue to be felt in this District.

## THE PARTIES

11. Plaintiff CoreCivic is a Maryland corporation with its principal place of business in Brentwood, Tennessee. CoreCivic operates private correctional and detention facilities throughout the United States.

12. Defendant Philip D. Murphy is a citizen of New Jersey and the Governor of the State of New Jersey. He is vested with "[t]he executive power" of the State of New Jersey and is charged with "tak[ing] care that the laws be faithfully executed." N.J. Const. art. V, § 1, ¶¶ 1, 11. "To this end," he has "power, by appropriate action . . . to enforce compliance with any constitutional or legislative mandate[.]" *Id.* ¶ 11. The Office of the Attorney General, as a principal department of the State, falls "under the supervision of the Governor," and the Attorney General is appointed by the Governor and serves at the Governor's

pleasure. N.J. Const. art. V, § 4, ¶ 2. In light of these duties, Governor Murphy has responsibility for enforcing AB-5207. He is sued in his official capacity.

13. Defendant Matthew J. Platkin is a citizen of New Jersey and the Attorney General of the State of New Jersey. He is the State's chief law enforcement officer, and heads the State's Department of Law and Public Safety. N.J. Stat. Ann. § 52:17B-2. In light of these duties, Attorney General Platkin has responsibility for enforcing AB-5207. He is sued in his official capacity.

## SUBSTANTIVE ALLEGATIONS

**I.   AB-5207 and Immigration Detention in New Jersey**

14. On January 4, 2021, Assembly Bill 5207 was introduced in the New Jersey Legislature.

15. AB-5207 prohibits agreements to detain people for civil immigration purposes, and specifically prohibits the State, local government agencies, and private detention facilities from entering into, renewing, or extending immigration detention agreements.

16. As enacted, the legislation provides in its entirety:

**30:4-8.15. Legislative findings and declarations relating to immigration detention agreements**

The Legislature finds and declares that:

a. It is the responsibility of the State to ensure respect for the human rights and civil rights of all people detained within New Jersey.

b. It is the responsibility of the State to protect the health and safety, including the physical and mental health, of individuals detained within New Jersey.

c. Detention centers and correctional facilities in New Jersey have a history of poor conditions, including inadequate medical and mental health care, use of isolated confinement, and incidents of violence and retaliation against people in detention.

d. In keeping with its obligation to protect and advance the health and just treatment of all people within the State of New Jersey, it is therefore the intent of the Legislature to prevent new, expanded, or renewed agreements to detain people for civil immigration purposes.

**30:4-8.16. Prohibition of immigration detention agreements; definitions**

a. As used in this act:

"Immigration detention agreement" means any contract, agreement, intergovernmental service agreement, or memorandum of understanding that authorizes the State, local government agency, or private detention facility to house or detain individuals for civil immigration violations.

"Local government agency" means a county, county sheriff, municipality, or other political subdivision and any agency, officer, employee, or agent thereof.

"Private detention facility" means any privately owned or operated facility that houses or detains individuals for civil immigration violations.

b. On or after the effective date of this act:

  (1) the State or a local government agency shall not enter into, renew, or extend any immigration detention agreement as defined in subsection a. of this section; or

  (2) a private detention facility operating in this State shall not

> enter into, renew, or extend any immigration detention agreement as defined in subsection a. of this section.

c. Nothing in this section shall be construed to prohibit, or in any way restrict, any action where the prohibition or restriction would be contrary to federal law, the United States Constitution, or the New Jersey Constitution.

17. The EDC is a "private detention facility," and the ICE Contract is therefore an "Immigration detention agreement," within the meaning of AB-5207 § 30:4-8.16(a). AB-5207 § 30:4-8.16(b)(2) thus prevents CoreCivic from renewing or extending the ICE Contract. Because CoreCivic provides essentially the entire immigration detention capacity for the Federal Government in New Jersey, AB-5207 will shut down immigration detention in New Jersey.

18. The New Jersey legislature and proponents of AB-5207 had CoreCivic and its contract with ICE in New Jersey firmly in mind when the bill was passed. Soon after the bill passed the legislature, Assemblyman Gordon M. Johnson, prime sponsor of AB-5207 in the Assembly, stated: "The renewal of the lease [sic] between CoreCivic and ICE demonstrates how important A5207 is for our state. I am hoping the Governor sees the need for this legislation and makes signing it a priority."

19. Amol Sinha, Executive Director of the American Civil Liberties Union in New Jersey, stated: "This bill means that Elizabeth Detention Center won't be able to renew any further. The bad news is that we will still continue to

have immigration detention in New Jersey and the United States—we are working with our national colleagues to dismantle immigration detention wholesale.  New Jersey, with this step decided that it will no longer be complicit with ICE's cruelty."

20. Governor Murphy signed AB-5207 into law on August 20, 2021, and the statute took immediate effect.

## II. U.S. Immigration and Customs Enforcement Detention Facilities

21. ICE manages and oversees the nation's civil immigration detention system.

22. Congress reassigned the border-enforcement functions formerly assigned to the Immigration and Naturalization Service to the Bureau of Immigration and Customs Enforcement, part of the U.S. Department of Homeland Security, in November 2002.  The Bureau of Immigration and Customs Enforcement began operations in March 2003 and was renamed U.S. Immigration and Customs Enforcement in March 2007.

23. Congress has authorized or required the detention of aliens under several different statutes and conditions.  *See*, *e.g.*, 8 U.S.C. §§ 1225(b)(1)(B)(ii), 1225(b)(2)(A), 1226(a), 1226(c).

24. Congress has also directed that the Secretary of Homeland Security "shall arrange for appropriate places of detention for aliens detained pending

removal or a decision on removal," 8 U.S.C. § 1231(g)(1),[1] and instructed that ICE "shall consider the availability for purchase or lease of any existing prison, jail, detention center, or other comparable facility for [detention]" "[prior] to initiating any project for the construction of any new detention facility," *id.* § 1231(g)(2). Thus, Section 1231(g)(2) authorizes ICE to use private contractors to arrange for detention.

25.  The Secretary also has "authority to make contracts . . . as may be necessary and proper to carry out the Secretary's responsibilities." 6 U.S.C. § 112(b)(2). And pursuant to federal regulations, the Secretary may "delegate broad authority to manage the agency's contracting functions to heads of such contracting activities." 48 C.F.R. § 1.601(a). ICE officials "may enter into contracts of up to fifteen years' duration for detention or incarceration space or facilities, including related services." 48 C.F.R. § 3017.204-90.

26.  On September 26, 2022, the en banc U.S. Court of Appeals for the Ninth Circuit considered a challenge to a materially identical California statute (Assembly Bill 32), which barred private companies from entering new contracts with any government—including the Federal Government—to operate jails, prisons, or detention centers in the state after January 1, 2021 and set a deadline of

---

[1] The authority granted to the Attorney General by §1231(g) and related provisions now resides in the Secretary of Homeland Security and divisions of his Department, including ICE.

9

2028 for all existing contracts to end. The Court found that plaintiff had established a likelihood of success on its challenge to the law, and granted a preliminary injunction against its enforcement.

### A. Dedicated ICE Detention Facility: Elizabeth Detention Center

27. CoreCivic manages and operates the EDC as a civil immigration detention facility pursuant to the ICE Contract. The EDC principally houses noncitizens detained at ports of entry at John F. Kennedy International Airport and Newark Liberty International Airport.

28. The EDC is the only dedicated ICE detention facility in the State of New Jersey.

29. The ICE Contract was awarded to CoreCivic for an initial base period of three years (July 1, 2005 through September 30, 2008), with five three-year renewal periods exercisable at the Government's option: Option Period One (October 1, 2008 through September 30, 2011); Option Period Two (October 1, 2011 through September 30, 2014); Option Period Three (October 1, 2014 through September 30, 2017); Option Period Four (October 1, 2017 through September 30, 2020); and Option Period Five (October 1, 2020 through September 30, 2023).

30. ICE exercised its renewal options to extend the ICE Contract for all five renewal periods. Accordingly, the ICE Contract will expire on August 31, 2023.

31. But for the prohibition imposed by AB-5207, CoreCivic would expect to negotiate and enter into a new contract with ICE to take effect following the expiration of its current ICE Contract.

32. The building occupied by the EDC is owned by Portview Properties, LLC ("Portview"), a Delaware limited liability company. On or about June 13, 1996, the tenant of the building assigned its lease agreement with the building's owner to Corrections Corporation of America , now known as CoreCivic. On or about December 21, 2001, the owner assigned the lease agreement to Portview. Portview has owned the building occupied by the EDC continuously since December 21, 2001.

33. The lease agreement by which CoreCivic controls the EDC is a "net" lease, pursuant to which CoreCivic is responsible for all maintenance, repairs, and alterations. Under the lease agreement, CoreCivic accepted the premises as a vacant building, and made alterations at significant cost to convert the premises into an operating civil immigration detention facility.

**B.     Non-Dedicated Detention Facility: Bergen County Jail**

34. In addition to the EDC, which is the sole dedicated ICE detention facility in the State, there is one facility in New Jersey that remains authorized for ICE's use: the Bergen County Jail, located at 160 South River Street, Hackensack, NJ 07601, with a capacity of 1,150 beds. This facility is owned by Bergen County

and operated by the Bergen County Sheriff's Office.

35. On or about November 12, 2021, however, the last 15 ICE detainees at the Bergen County Jail were taken into ICE custody and transferred to a federal correctional facility 300 miles away, in Western New York State, leaving the EDC facility as the principal if not sole facility used by ICE in New Jersey.

36. Absent relief from this Court, AB-5207 will forbid renewal of the ICE Contract upon its expiration. Thus, effective August 31, 2023, AB-5207 will prevent ICE from contracting with CoreCivic to house immigration detainees in accordance with ICE's Constitutional and federal statutory rights and duties. Indeed, ICE will be forced to entirely transform its approach to detention in the State. And CoreCivic will be unable to continue serving as ICE's contract partner for the same purposes.

### III. Financial Impact of AB-5207 on CoreCivic

37. If AB-5207 forces CoreCivic to close the EDC and the ICE Contract therefore is not extended, CoreCivic would lose approximately $18 million per year in revenue over the next four years, and comparable amounts going forward for any additional years as to which the ICE Contract would otherwise be extended.

38. CoreCivic invested more than $7.5 million in converting, outfitting, and otherwise making ready the EDC, which will be lost if CoreCivic is no longer

able to use the EDC for its intended purpose.

## COUNT I
## FEDERAL PREEMPTION OF STATE LAW

39. Plaintiff repeats and realleges the allegations in the preceding paragraphs as if fully set forth herein.

40. Federal immigration law provides that ICE "shall arrange for appropriate places of detention for aliens detained pending removal or a decision on removal," and "[w]hen United States facilities are unavailable or facilities adapted or suitably located for detention are unavailable for rental, the Attorney General [now ICE] may expend . . . amounts necessary to acquire land and to acquire, build, remodel, repair, and operate facilities . . . necessary for detention." 8 U.S.C. § 1231(g)(1).

41. Congress has instructed that ICE "shall consider the availability for purchase *or lease* of any existing prison, jail, detention center, or other comparable facility suitable for [detention]" before beginning any project to develop a new detention facility.  8 U.S.C. § 1231(g)(2) (emphasis added).

42. Section 1231(g)(1) vests ICE with broad discretion to determine where aliens are detained.  See also 28 U.S.C. § 530C(a)(4) (authorizing Attorney General/ICE, in their "reasonable discretion," to carry out the activities of the Department of Justice "through any means," including "through contracts, grants, or cooperative agreements with non-Federal parties")

43. By prohibiting its use of private detention facilities, AB-5207 dramatically reduces ICE's discretion in locating federal immigration detainees and prisoners throughout the District and the State and prohibits a means of federal detention that Congress authorized. It frustrates Congress's delegation of discretion to ICE to discharge its Constitutional and statutory responsibilities, and impermissibly regulates the Federal Government's contracting decisions by effectively displacing the Federal Government's determination of what immigration detention facilities are "appropriate." 8 U.S.C. § 1231(g)(1).

44. AB-5207 is therefore in conflict with federal immigration law, interferes with the purpose behind the federal immigration law, presents a substantial obstacle to the purposes of Congress in enacting the federal immigration law and, in intruding into federal immigration law, improperly imposes into an area where Congress has manifested its intent to occupy the entire field.

45. AB-5207 is unconstitutional and invalid as applied to CoreCivic's operations on behalf of ICE under conflict, obstacle, and field preemption principles.

## COUNT II
## VIOLATION OF INTERGOVERNMENTAL IMMUNITY

46. Plaintiff repeats and realleges the allegations in the preceding paragraphs as if fully set forth herein.

47. CoreCivic, as a contractor for the United States, enjoys and is clothed in the Federal Government's intergovernmental immunity under the Supremacy Clause.

48. A state law is invalid "if it operates so as to discriminate against the [Federal] Government or those with whom it deals." *United States v. City of Detroit*, 355 U.S. 466, 473 (1958).

49. Congress has not authorized the State to regulate the Federal Government's activities with respect to private detention facilities like CoreCivic's. AB-5207 gives New Jersey a virtual power of review over ICE's contracting decisions, and effectively prohibits the Federal Government from operating with its desired personnel and exercising its discretion to arrange for immigration detention in the privately run facilities it has deemed appropriate.

50. New Jersey Statute 30:4-91.10 provides: ". . . the Commissioner of Corrections may authorize the confinement of eligible inmates in private facilities." AB-5207 thus unlawfully discriminates against CoreCivic in its capacity as a contractor for the Federal Government because it targets private immigration detention, an area under federal control, while New Jersey law allows other forms of private detention that implicate non-federal areas.

51. AB-5207 is unconstitutional and invalid as applied to CoreCivic's operations on behalf of ICE.

## COUNT III
## Declaration That AB-5207 Does Not Prohibit Renewal of the ICE Contract

52. Plaintiff repeats and realleges the allegations in the preceding paragraphs as if fully set forth herein.

53. As noted above, AB-5207(c) provides:

c. Nothing in this section shall be construed to prohibit, or in any way restrict, any action where the prohibition or restriction would be contrary to federal law, the United States Constitution, or the New Jersey Constitution.

54. AB-5207 cannot be construed to apply CoreCivic's current and future contractual relationship with the Federal Government because such a construction would violate the Federal Constitution.

55. Therefore, in the event AB-5207 is not otherwise declared invalid, this Court should issue a declaratory judgment that AB-5207 does not prevent the government and CoreCivic from renewing the ICE Contract, from entering into a new contract with like terms and effect, or otherwise apply to CoreCivic's current and future contractual relationship with the Federal Government.

## PRAYER FOR RELIEF

WHEREFORE, CoreCivic respectfully requests that this Court enter judgment:

    a. Declaring that AB-5207, codified at N.J. Stat. Ann. §§ 30:4-8.15 to -8.16, violates the Supremacy Clause of the United States

16

    Constitution and is unconstitutional as applied to CoreCivic in its operation of immigration detention facilities for ICE;

b.  Preliminarily and permanently enjoining Defendants, as well as their successors, agents, employees, and all those under their supervision, from enforcing AB-5207 against CoreCivic in its operation of immigration detention facilities for ICE;

c.  Preliminarily and permanently enjoining Defendants, as well as their successors, agents, employees, and all those under their supervision, from interfering with CoreCivic's negotiation and/or entry into a new contract with ICE;

d.  In the alternative, declaring that AB-5207 does not prevent the government and CoreCivic from renewing the ICE Contract, from entering into a new contract with like terms and effect, or otherwise apply to CoreCivic's current and future contractual relationship with the government;

e.  Awarding attorneys' fees and costs as permitted by law; and

f.  Granting such other and further relief as the Court deems just and proper.

Dated: February 17, 2023

                SCHLAM STONE & DOLAN LLP

                By: _____
                    Bradley D. Simon
                    Thomas A. Kissane
                    David Goldsmith
                    26 Broadway, 19th Fl.
                    New York, New York 10004
                    (212) 344-5400
                    (212) 344-7677 (fax)
                    bsimon@schlamstone.com
                    tkissane@schlamstone.com
                    dgoldsmith@schlamstone.com

                    *Attorneys for Plaintiff CoreCivic, Inc.*